# EXHIBIT 1



## PHYSICIAN AGREEMENT

**THIS AGREEMENT** is made as of this 7th day of September, 2022 by and between **MGH FAMILY HEALTH CENTER, INC., d.b.a. MUSKEGON FAMILY CARE** ("MFC"), a Michigan non-profit corporation, located at 2201 S. Getty Street, Muskegon, Michigan 49444, and, ("Robin Webb, M.D.") herein after known as "Provider".

**WHEREAS,** MFC is a non-profit corporation organized under the laws of the State of Michigan; and

**WHEREAS,** Provider is Physician is licensed to practice as a Provider in the State of Michigan; and

**WHEREAS,** MFC desires to employ Provider as a full-time employee and Provider is willing to be employed under mutually satisfactory terms and conditions as set forth below.

**NOW, THEREFORE** in consideration of the mutual covenants contained in this Agreement, MFC and Physician agree as follows:

1.  **Employment; Job Description**

    A.  MFC hereby engages Provider and Provider accepts such engagement as an employee of MFC. Provider represents to MFC that Provider is licensed to practice as a Provider in the State of Michigan, has all requisite federal and state prescription, pharmacy and controlled substance licenses in Provider's practice area and shall maintain all qualifications typically required of a Provider in such practice area at MFC.

    B.  Provider shall be responsible for and shall perform the duties described in the Job Description attached hereto as Exhibit A and made a part of this Agreement ("professional services"). Provider shall perform the duties required to be performed at such location as MFC shall direct and shall adhere to all applicable MFC policies.

2.  **Extent of Service**

    A.  Provider shall be employed full-time, 40 hours per a week starting (date to be determined), and shall devote 4.5 days in patient care.
    B.  Provider will start with 18-20 patients per day with reassessment every thirty days, not exceeding 90 days, until target of 25 or more patients per day is met.
    C.  Provider will refer to woman's health female examinations.
    D.  Provider agrees to notify MFC if at any time Provider cannot fulfill Provider's obligation to practice medicine on a full-time basis in accordance with the terms of this Agreement. Provider and MFC agree to use their best efforts to provide mutually acceptable alternative coverage during a period of illness or disability on the part of Provider.

3.    **Agreement not to compete**

   A.    During the term of this Agreement and for a period of two (2) years following its termination, except if such termination is a result of the bankruptcy or cessation of material business operations by MFC, provider agrees that they will not directly or indirectly practice medicine, individually, as a member of any partnership, professional corporation or employee of any such entity, including a health care facility located within a twenty-five (25) mile radius of the principal office of MFC in Muskegon, Michigan and that is or will be in competition with any of the services provided under this Agreement.

4.    **Reporting Relationships, Rules and Standards**

   A.    The Provider, with respect to patient care, shall exercise his/her professional medical judgment consistent with the clinical needs and consent of each patient. The Provider's performance and the manner in which he/she conducts his/her practice shall at all times be satisfactory to MFC. It is understood and agreed that the Provider shall work under the supervision of MFC Medical Director or delegate, and shall abide by the rules, regulations, polices and performance objectives of MFC.

   B.    Provider shall provide professional medical services in a manner consistent with: (i) the prevailing standards of medical practice and professional ethics applicable to his/her specialty and locality; (ii) all applicable federal, state and local governmental laws, rules and regulations; (iii) all applicable standards established from time to time by third-party payors (including, but not limited to Medicare and Medicaid); (iv) standards established by accrediting agencies accrediting MFC and its activities.

5.    **Provider's Obligations**

   A.    Provider shall be Board Eligible or Board Certified.

   B.    Provider shall be: permanently licensed to practice as a Provider in the State of Michigan and shall not have had his/her license suspended or revoked at any time; licensed without restriction under state and federal law to dispense all controlled substances, narcotics and other drugs; in good standing with the MSA/Department of Community Health, Health Care Financing Administration and all other governmental/regulatory agencies related to the professional services to be provided under this Agreement; and participating in all pertinent third party payment programs in which MFC participates.

C. Provider shall maintain updated clinical skills by regularly participating in appropriate continuing professional education activities and maintaining good standing in an appropriate professional association, to MFC's satisfaction.

D. Provider shall not discriminate among patients on the basis of sex, race, color, age, creed, national origin, disability, religion, height, weight, marital status, or genetics.

E. Provider shall attend MFC staff and other meetings as required by MFC.

6. Compliance

A. The provider shall work in compliance with the policies and procedures of MFC and shall use their best efforts at all times to support and enforce the policies, procedures, goals and objectives of MFC. Provider shall devote their full medical professional time and services and best efforts to the performance of their employment under this Agreement. During the term of the Agreement, the provider shall not, at any time or place whatsoever except under and pursuant to this Agreement, provide professional time and services to others. All patients, patients' accounts and records and all fees or other income attributable to provider's professional medical services during the term of this Agreement shall belong to MFC. All volunteer work relating to professional medical services or talents of the provider outside the scope of employment during the term of this Agreement are permitted unless such activities interfere with the performance of the providers duties hereunder, expose MFC to potential liability for such activities or negatively reflect upon MFC.

B. Nothing in this Agreement shall in any way be construed to restrict the provider's freedom and judgement in the practice of medicine and the provider is free to refer or transfer any patient to any facility for medical care and treatment to the extent that it is appropriate in provider judgement.

7. Assignment of Billing and Collection of Fees

A. Provider expressly and irrevocably transfers and assigns to MFC all rights and interests of Provider in and to any fees, whether in cash or goods, resulting from or incident to Provider's practice of medicine pursuant to this Agreement. Provider shall provide information required to enable MFC to submit prompt and accurate billings, including all chart documentation required by third-party payors. Provider agrees to execute all powers of attorney, agreements or other instruments, which may be required to give MFC the fullest authority available to bill and collect on Provider's behalf

from insurers, third-party payors, health maintenance organizations, individual patients, governmental bodies and other payors for professional services.

B.  MFC shall be entitled to bill and receive all fees for professional services rendered pursuant to this Agreement by Provider through whatever means it deems most efficient. All fees generated at all times pursuant to this Agreement shall be and remain the property of MFC.

C.  MFC shall not be liable to Provider for any decisions made in good faith by MFC relating to the submission of bills or for any violation of law by Provider with respect to billing. MFC shall be responsible for pursuing the collection of accounts receivable in compliance with applicable laws relating thereto. The provision of services at a discount or without charge shall be subject to approval of MFC.

D.  Provider grants to MFC the exclusive right to, and appoints MFC as Provider's agent to, negotiate on Provider's behalf to provide services for health maintenance organizations, preferred provider organizations, other alternative delivery systems, insurers, employers and other payors.

6.  Compensation, Benefits and Insurance

A.  In consideration of all professional services provided by Provider under the terms of this Agreement, and subject to the provisions set forth below, MFC shall pay Provider a rate of $200,000 (Two Hundred Thousand Dollars) annually under this Agreement, starting on the date of the commencement of services, payable in checks issued in accordance with MFC payroll policies. Provider shall have discussion of a salary adjustment upon any annual re-negotiation of the renewal of this Agreement, or as amended.

B.  Provider shall receive benefits commensurate with Provider's position and consistent with the benefit programs for full-time employees of MFC, which shall include:

(1)  In addition to regularly scheduled MFC holidays, twenty-eight (28) days paid time off during each year of this Agreement. Leaves of absence for medical, FMLA, educational, military, and other personal reasons consistent with law and/or MFC policies, are also available.

(2)  Continuing Medical Education/Licensing. Full time Provider's shall be entitled to one (1) week/forty (40) hours of annual absence for continuing professional education for each year of this agreement. Muskegon Family Care shall recognize only accredited activities for

continuing education programs. Absences under this agreement are subject to MFC approval in light of scheduling and staffing requirements.

(3)    Full time Provider shall receive reimbursement up to Three-Thousand Dollars ($3,000) annually for continuing professional education including licensing, board certification, professional association dues, professional society dues, professional journals and books, travel/lodging costs, food costs and registration fees. All reasonable expenses shall be reimbursed with submission of appropriate receipts.

(4)    MFC shall provide malpractice coverage for work performed while working for MFC to cover Provider for any claims against the period of Provider's employment. Provider shall immediately inform MFC, by written notice, if a complaint is filed, a proceeding is commenced, or an issue arises which may result in the suspension, restriction, or revocation of Provider's license to practice, or his/her qualifications to serve as a MFC employee.

## 9.   Facilities and Conduct of Practice

A.    MFC shall provide Provider with space for Provider's practice needs.

B.    MFC shall provide Provider with such facilities, equipment, supplies, services and qualified support staff as MFC determines to be reasonably necessary for the conduct of Provider's practice, subject to current MFC practices and reasonable financial constraints. MFC shall consult with Provider on such determinations. Anything to the contrary contained herein notwithstanding, at all times personnel provided by MFC or its affiliates shall be employees or contractors of MFC or its subsidiaries or affiliates. MFC may consult with Provider with respect to the identity of, and the hiring and firing of, the personnel employed in conjunction with Provider's practice, however the final decisions regarding all such personnel matters shall be made by MFC in a manner consistent with the employee policies of MFC and its affiliates in effect from time to time.

C.    All records contained in the files of patients treated by Provider as an employee of MFC shall, to the extent permitted by law, be the property of MFC, and Provider shall not remove these records upon termination of this Agreement except pursuant to rules established by MFC or pursuant to a specific request in writing with respect to and from a patient or patients treated by Provider during the term of this Agreement.



10.   **Term and Termination**

*To be determined ~RJW*

A.   This Agreement shall become effective on _____ when Provider shall commence services under the Agreement and, and shall remain in effect for a term of one (1) year from that date. This Agreement may be renewed for additional periods by written agreement of the parties.

B.   On or within sixty (60) days of each annual anniversary of the date of commencement of services under the Agreement the parties shall consider an annual salary adjustment for Provider. The nature, type, amount, and time of commencement of any such possible adjustment in salary and/or benefits, however, is to be determined solely within the discretion of MFC.

C.   In addition to the termination provisions stated elsewhere herein, this Agreement may be terminated by either party without cause on ninety (90) days written notice of the party's intention to do so. Failure of the Provider to provide ninety (90) days written notice of her/his intent to terminate will result in forfeiture of the payout of unused accrued PTO upon termination. This Agreement may also be terminated by MFC for "cause", effective upon notice to Provider. Termination for cause will result in the forfeiture of the payout of unused accrued PTO. Such termination will be evidenced by written notice to Provider, which shall specify the "cause" for termination. "Cause" shall include, but is not limited to:

   (1)   Termination, revocation, restriction, suspension or permanent loss of Provider's license to practice medicine in Michigan; medical staff membership and/or clinical privileges through Trinity Alliance of Michigan; federal and state prescription, pharmacy or controlled substance licenses; or failure to be eligible to receive reimbursement from a third party with which MFC has in effect a participation agreement;

   (2)   Commission of acts or omissions constituting willful misconduct, dishonesty, fraud or other illegal, unethical, or improper acts;

   (3)   Disability of Provider. For purposes of this subsection, "Disability" shall mean a condition, physical, mental or emotional in origin, which has or will prevent Provider from practicing medicine as required by this Agreement, with or without reasonable accommodation, for more than ninety (90) days within any twelve (12) month period.

   (4)   Breach of this Agreement by Provider or failure by Provider to comply with the policies of MFC or to observe the applicable standards of care.

  (6)  The failure, inability, or refusal of Provider to perform the professional services described in this Agreement.

 D. In the event this Agreement is terminated for any reason, all obligations of both parties shall cease on the date of such termination; however, nothing in this subsection shall:

  (1)  relieve MFC of its obligation to pay compensation through the date of termination; or

  (2)  relieve Provider of his/her professional obligation to complete professional services, including but not limited to completion of medical records or other necessary documents, assist MFC in any applicable third party billing or answering any action filed against MFC related to professional services provided by Provider during the term of this Agreement, and otherwise satisfying all responsibilities hereunder for professional services rendered prior to the termination of this Agreement.

 E. In the event this Agreement is terminated because of Provider's death, any earned, but unpaid compensation shall be paid to Provider's estate.

## 11. Cooperation

The parties shall each promptly notify the other of any knowledge regarding any occurrence which may result in a claim against either of them arising out of the professional services rendered by Provider pursuant to this Agreement and shall cooperate with the other whenever any claim is filed against either party with respect to the professional services rendered by Provider or MFC hereunder. This provision shall survive the termination of this Agreement.

## 12. Disclosure of Records

If this Agreement is determined to be a contract described in Section 1861(v)(1)(I) of the Social Security Act, Provider agrees that until the expiration of four (4) years after the furnishing of professional services pursuant to this Agreement, Provider shall make available, upon written request, to MFC or governmental representatives, this Agreement, and all documents and records of Provider necessary to certify the nature and extent of costs paid by MFC pursuant to this Agreement.

## 13. Assignment

MFC may assign this Agreement to another corporation affiliated or under common

control with MFC or to a successor corporation to MFC upon notice to Provider. Provider may not assign his/her rights or obligations under this Agreement.

## 14. Entire Agreement

This Agreement contains the complete and exclusive understanding of the parties with respect to Provider's employment with MFC. This Agreement supersedes all other agreements between the parties with respect to the employment relationship. Furthermore, all policy statement, manuals or documents issued by MFC shall be interpreted in a manner consistent with this Agreement. In executing this Agreement, Provider does not, and may not, rely on any representations, oral or written, other than those contained in this Agreement.

## 15. Amendments

Any amendments to this agreement shall be effective and binding only if in writing and signed by Provider and the Chief Executive Officer of MFC or his/her designee.

## 16. Reopener

MFC or Provider shall have the right to reopen this Agreement in the event any Medicare or Medicaid rules, regulations, or other managed care or third party payor's reimbursement rules or regulation, are modified in a manner which materially affects any of the provisions of this Agreement.

## 17. Notice

Any notice required under this Agreement by either party shall be directed in writing to the party to be notified, by certified mail, return receipt requested, and delivered to such address as shown herein, unless such address is changed consistent with this Paragraph.

**MUSKEGON FAMILY CARE:**

Muskegon Family Care
2201 S. Getty Street
Muskegon, MI 49444
ATTENTION: Chief Executive Officer


MD:
Dr. Robin Webb
738 Park Ave.
Holland, MI 49423

18.   Third Party Rights

This Agreement is for the benefit of the parties and is not entered into for the benefit of any other person or entity including but not limited to patients and their personal representatives.

19.   Severability

The invalidity or unenforceability of any provision of this Agreement shall not affect the other provisions, and this Agreement shall be construed as if such invalid or unenforceable provision were omitted.

20.   Governing Law

This Agreement is a Michigan contract and shall be construed and the rights of the parties determined in accordance with the laws of the State of Michigan.

21.   Waiver of Breach

The waiver by either party of a breach of any provision of this Agreement by the other party shall not operate or be construed as a waiver of any subsequent breach by that party.  No waiver shall be valid unless in writing and signed by the party against whom such waiver is sought.

**IN WITNESS WHEREOF**, the parties have executed this Agreement the day and year first above written.

**NGH FAMILY HEALTH CENTER, INC.**
**D.b.a. MUSKEGON FAMILY CARE**

By: _____

Tracy McDaniel

Its:    President/CEO

Physician:

_____

Robin Webb, M.D.
Physician Provider

10/10